301 So.2d 252

James BEASLEY

v.

STATE.

1 Div. 517.

Court of Criminal Appeals of Alabama.

Oct. 1, 1974.

---

James B. Watson, Monroeville, for appellant.

William J. Baxley, Atty. Gen. and David W. Clark, Asst. Atty. Gen., for the State.

DeCARLO, Judge.

James Beasley was convicted of the murder of his common-law wife and punishment was fixed at life imprisonment.

On August 25, 1973, Chief James Maples of the Monroeville Police Department was called to the home of appellant. Arriving at approximately 11:00 A.M. he found Lucille Beasley's body lying facedown in the hallway. James Beasley appeared to be drinking, and the Chief did not talk with him, but called the Sheriff.

Deputy Sheriff Larry Ikner arrived some fifteen minutes after the shooting and observed pieces of a twenty gauge shotgun scattered some eleven feet down the hallway at the back of the deceased's feet. The gun stock, along with a piece of floor tile that appeared to come from the kitchen, were found in a trash can at the rear of the house. From his investigation, Deputy Ikner learned that Geneva Young, a five-year old, was in the house when the shooting occurred. He saw a portable sewing machine with a "bursted" case on the floor, and said there appeared to have been a struggle.

Sgt. J. C. Butler, a State Investigator, had a conversation with James Beasley on August 27, 1973, in the presence of Deputy Ikner, and after being advised of his "rights" appellant gave this account of the shooting:

" 'On Saturday, August 25th, 1973, my brother, Willie Ervin Beasley, and Pee Wee drove two pulpwood trucks up to Mr. John Salter's and I drove Willie's car and picked up the beam to be put on ·Willie's truck. We left there and went and got some beer at Grace's place in Conecuh County. I had drank some gin before I got there and drank some beer on the way back. I don't remember buying no groceries but we were arguing about something. My wife got my loaded twenty gauge bolt-action shotgun out of the closet and began to beat it on the floor in the hall, holding it by the barrel, and beating the gun on the floor. I picked up the sewing machine and threw it on the floor and started to walk out the door when the gun went off. I ran back to her as she fell. I then ran out hollering, "I think 'Cille is dead." I then asked someone to get the police and the doctor. Signed James Beasley.' "

Sgt. Butler photographed the body and the scene and carried items found in the house to the State Toxicologist in Mobile. At the trial, he was asked to read this toxicologist's report:

" 'Memorandum: To File; By Marion L. Sennett; Subject: Laboratory Results. On Wednesday, August 29, 1973, at 10:40 a. m., Sergeant J C Butler, State Investigator, submitted to this laboratory two paper bags containing parts of a Mossberg Model 185 D A 20 gauge shotgun, pieces of tile, one plastic envelope containing material from underneath tile, two live shells, one hull and one screw cap bottle containing 4 mls. of blood. He requested that the material submitted be examined and compared. Laboratory examination of the material submitted disclosed the following findings: The blood sample submitted labeled 'Lucille Beasley' was negative for Ethyl Alcohol. There is no evidence on

the stock to indicate that it has hit the tile submitted. The muzzle end of the shotgun barrel has material on it similar to the material underneath the tile. This end of the barrel is bent. The trigger is broken off and the trigger and the trigger mount both have material on them similar to the tile material and the material underneath the tile. The hull submitted is not useful for comparisons because the primer has been mutilated. The appearance of the shotgun indicates that the shotgun stock was violently broken off and then the chamber end of the barrel beaten with the breaking of the trigger which could have fired a shell if one was chambered. Signed Marion L. Sennett, Criminalist One.' "

The coroner found two wounds on the body of deceased—one in the neck and one in the left breast showing powder burns. He described the small entrance wound in the center of the breast and a larger exit wound four inches above.

Appellant testified that on the morning of the shooting, he had been drinking gin and beer. During an argument with his wife, she took the shotgun from near the heating system and holding it by the barrel, started breaking it up on the floor. "I got hot then and got the sewing machine and threw it on the floor and started walking off and heard the gun go off." Appellant went back and called to her, but she did not move. He then called to the woman next door, " 'I think Lucille is dead.' " . . . " '[S]omebody get the doctor and the law.' "

Appellant denied having the shotgun and denied having struggled or fought with his wife. He contended the children were playing, and he and Lucille were alone at the time of the occurence.

### I.

Appellant insists the evidence presented was insufficient to sustain a conviction.

This question was first raised in his motion for a new trial.

According to appellant, his wife's death occurred as a result of her own act. The expert testimony, however, indicates floor tile material was found on the end of the barrel. This is in direct conflict with appellant's explanation that at the time of the shooting she was holding the gun by the barrel. Further, there was no explanation as to why the stock was found outside the house.

It is our judgment that the trial court was not in error in overruling the motion for a new trial. Jarrell v. State, 251 Ala. 50, 36 So.2d 336; Dolvin v. State, 51 Ala. App. 540, 287 So.2d 250. Under the evidence before us, it became a question for the jury to determine whether the deceased died by her own act or was killed by the discharge of the shotgun through the agency of the appellant.

### II.

Appellant next asserts he was too drunk to form the requisite intent necessary in a conviction for murder in the first degree. Counsel argues that the evidence adduced at the trial shows appellant had been drinking beer and gin prior to the incident, and the arresting officer testified appellant appeared to be intoxicated.

"It is undoubtedly the law, that 'a man may, in many instances, be so drunk as to be incapable of forming or entertaining any specific intention at all.' " Patterson v. State, 30 Ala.App. 135, 1 So.2d 759.

In the case before us, however, we have not seen sufficient evidence to support this contention. Appellant did not show that his intoxication was so excessive as to paralyze his mental faculties and render him incapable of forming the necessary intent to take life.

"Mere drunkenness, voluntarily produced, is never a defense against a criminal charge, and can never palliate or reduce the grade of an offense, unless it is so extreme as to render impossible some specific mental condition which is an essential element of the criminal act." Walker v. State, 91 Ala. 76, 9 So. 87.

We searched the record and have found no error.

Affirmed.

All the Judges concur.